IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:08-CT-3175-FL

| | |
|---|---|
| ROBERT TIMOTHY CARRINGTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL F. EASLEY, et al, ) <br> ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM** <br> **&** <br> **RECOMMENDATION** |

This Cause comes before the Court upon Plaintiff's "Second Motion for Default Judgment" with regard to defendant Jeremy Dancey. [DE-32]. Plaintiff filed a complaint against various defendants, including Dancey, on December 24, 2008. [DE-1]. In his complaint, Plaintiff accused Dancey of sexually assaulting him while he was an inmate at a correctional facility where Dancey worked as a guard. The Court subsequently dismissed Plaintiff's claims against all defendants except Dancey. [DE-5]. When he failed to respond to Plaintiff's complaint, entry of default was entered as to Dancey on July 15, 2010. [DE-31]. Plaintiff has now filed a motion for default judgment. The motion was referred to the undersigned November 9, 2010. The Court held an evidentiary hearing on January 21, 2011 to establish the truth of Plaintiff's allegations and to determine the amount of damages, if any, to which Plaintiff might be entitled. *See* Fed. R. Civ. P. 55(b)(2). For the reasons stated herein, the undersigned recommends granting Plaintiff's Second Motion for Default Judgment.

1

**Background**

Plaintiff was incarcerated at Tillery Correctional Institution in April and May of 2006. [DE-37-1, p.1]. Defendant Jeremy Dancey, a former correctional officer at Tillery, approached Plaintiff while he was sitting on his bunk and informed him he would be strip-searched. Plaintiff followed Dancey to the staff lounge, but when they arrived, another officer was present and eating a meal. [*Id.*]. Dancey motioned for Plaintiff to go into the staff bathroom, where he ordered him to undress. Plaintiff removed all of his clothing except for his boxer shorts. [*Id.*]. Although Plaintiff had undergone strip searches at Tillery on several occasions, such searches had been conducted either with a group of other inmates or with more than one officer present. [*Id.* at p.2]. During previous strip searches, Plaintiff was instructed to shake his boxer shorts while wearing them, squat, and cough. Thus Plaintiff kept his boxer shorts on when Dancey ordered the strip search. Dancey told Plaintiff to remove his boxer shorts. [*Id.*]. Plaintiff took off his boxer shorts and handed them to Dancey. As he did so, Dancey grabbed Plaintiff's penis with his hand and bent down. [*Id.*]. Dancey attempted to put his mouth on Plaintiff's penis, but Plaintiff pushed him away. Dancey placed his hand on Plaintiff's chest and pushed him against the wall. Plaintiff told Dancey to give him his clothes. He then dressed and left the staff lounge. [*Id.*].

At the hearing, Plaintiff also testified for the first time that, after Dancey pushed him against the wall, Dancey lifted his fingers to his lips to "shush" him and told Plaintiff, "Now, that wasn't so bad, was it?" This aspect of the assault does not appear in Plaintiff's pleadings. The Court therefore asked counsel whether Plaintiff had previously relayed this information to her. Counsel affirmed that he had. Furthermore, she informed the Court that this information was

2

reflected in her notes. Whereupon, the Court directed her to submit her notes relating to this evidence by Friday, January 28, 2011. Counsel for Plaintiff has not done so, nor has she explained her failure to do so. Counsel's failure to respond to the Court's direction calls the credibility of this evidence into question. The undersigned regards this specific testimony as an attempt by Plaintiff to "gild the lily" and affords it no weight.[1]

Back at his bunk, Plaintiff was "shaking" and felt "furious and degraded." [DE-37-1, p.2]. Although he feared reprisal from prison administrators, Plaintiff eventually reported the incident. Dancey refused to cooperate with the ensuing investigation and resigned his position at Tillery. [DE-34-1, pp.2-3]. According to an affidavit filed by the Chief Deputy Attorney General of North Carolina, Dancey was later arrested and charged with committing a sexual act against an inmate. [*Id.*]. No other information appears in the record regarding criminal prosecution of Dancey, however.

Following the incident, Plaintiff began to have nightmares, incidents of bed-wetting, anxiety attacks, and feelings of claustrophobia. As a child, Plaintiff was sexually molested by a cousin, and the feelings of betrayal and helplessness he experienced as a child resurfaced. [DE-37-1, pp.2-3]. At the hearing, Plaintiff requested nominal, compensatory, and punitive damages against Dancey in the amount of $100,000.

**Legal Background**

---

[1] On February 3, 2011, after the instant Memorandum and Recommendation was drafted, but before it was filed, counsel filed her notes, a supplemental memorandum, and an affidavit. [DE-42]. Her notes do not reflect the comments attributed to Dancey. Her affidavit maintains that Plaintiff told her this version of the story. The memorandum is a rehash of the previous memorandum and a catalog of cases dealing with sexual assault. Many of the cases relied on by Plaintiff or found by the undersigned cited for the proposition that "sexual assaults qualify as physical injuries as a matter of common sense" neither characterize the nature of the sexual assault nor otherwise describe it. Moreover, many of these cases compound this failing by relying solely on Liner v.Goord, 196 F.3d 132, 135 (2d Cir. 1999), a case in which the sexual assault is not otherwise described in the opinion.

3

Plaintiff seeks default judgment. "'Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).'" Alea London Ltd. v. Oxendine, No. 7:09-CV-165, 2010 U.S. Dist. LEXIS 94187, at *3-4 (E.D.N.C. Sept. 9, 2010) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2682 (3d ed. 1998) [hereinafter Wright]). Entry of default is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). After the clerk enters default, the party may seek a default judgment under Rule 55(b)(1) or (2), depending on the nature of the relief sought. Rule 55(b) "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). It is within the Court's discretion to grant default judgment when a defendant is unresponsive. *See* Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987). Here, defendant Dancey has failed to plead or otherwise defend himself against Plaintiff's claims, despite proper service of process, and entry of default has been entered against him. Plaintiff's motion for default judgment is therefore proper and within the Court's discretion to grant.

In determining whether to award a default judgment, the Court will take as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). "Nonetheless, the Court must 'consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Plumbers & Steamfitters Local 486 Pension Fund v. RLS Heating, Air Conditioning, & Refrigeration, LLC, No. WDQ-10-2716, 2010 U.S.

4

Dist. LEXIS 135369, at *9 (D. Md. Dec. 22, 2010) (quoting Wright at § 2688). In determining the amount of damages to award in a default judgment, "[t]he court may conduct hearings . . . to enter or effectuate judgment." Fed. R. Civ. P. 55(b)(2). A hearing is necessary "when the damages sought are not 'a liquidated sum or one capable of mathematical calculation.'" Maloney v. Disciples Ltd., LLC, No. 1:06-CV-00124, 2007 U.S. Dist. LEXIS 36726, at *3-4 (M.D.N.C. May 8, 2007) (quoting United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979)).

In the instant case, Plaintiff initially filed a *pro se* complaint seeking monetary damages for his "pain and suffering, mental and emotional distress" caused by the sexual assault. [DE-1, p.5]. In a letter later filed with the Court, Plaintiff stated he was pursuing his claim under 42 U.S.C. § 1983. [DE-7]. Accepting all of the factual allegations of Plaintiff's complaint as true, this Court must therefore determine whether Plaintiff has stated a legitimate cause of action against Dancey, and if so, the amount of damages to which he may be entitled.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). "A prison guard may violate the Eighth Amendment by . . . sexually assaulting an inmate. Sexual assault is 'not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries' under § 1983." Ellis v. Elder, No. 7:08-CV-00642, 2009 U.S. Dist. LEXIS 7814, at *7-8 (W.D. Va. Feb. 4, 2009) (quoting Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998)); *see also* Wolfe v. Cooper, No. 8:08-CV-869, 2009 U.S. Dist. LEXIS 78865, at *7-8 (D.S.C. Sept. 2, 2009) (same). "To be actionable, the alleged sexual contact must be

5

incompatible with 'contemporary standards of decency.'" Ellis, No. 7:08-CV-00642, 2009 U.S. Dist. LEXIS 7814, at 7 (quoting Helling, 509 U.S. at 32). "In stating such a claim, however, the inmate must allege facts on which he could prove that the unwanted touching had some sexual aspect to it; his own perceptions alone that the contact was of a sexual nature are not sufficient." *Id.*

The Prison Litigation Reform Act ("PLRA") places limitations on the ability of prisoners to recover damages in civil suits, however. *See* 42 U.S.C. § 1997e(e) (stating that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury"). Here, Plaintiff alleges no physical injury, only mental and emotional suffering. Courts considering the issue have found that a sexual assault qualifies as a "physical injury" under the PLRA. *See, e.g.*, Kahle v. Leonard, 563 F.3d 736, 741-42 (8th Cir. 2009) (concluding that, where a prison guard entered a prisoner's cell three times during the period of one hour, with each visit lasting from three to five minutes, and during which the guard kissed the prisoner, performed oral sex on her, and rubbed his genitals against hers, such sexual assault qualified as a "physical injury" under 42 U.S.C. § 1997e(e)); Liner v. Goord, 196 F.3d 132, 135 (2d Cir. 1999) (providing no description of the alleged sexual assault but stating that, "[n]evertheless, accepting the allegations in the complaint, the alleged sexual assaults qualify as physical injuries as a matter of common sense. Certainly, the alleged sexual assaults would constitute more than *de minimis* injury if they occurred."); Duncan v. Magelessen, No. 07-CV-01979, 2008 U.S. Dist. LEXIS 117348, at *13 (D. Colo. July 15, 2008) (concluding that, where the plaintiff alleged that the defendant repeatedly fondled his penis during pat-down searches, the plaintiff was not barred by the PLRA from seeking damages, despite his failure to

6

allege physical injury, because "unwanted sexual contact, alone, is a physical injury for which there may be compensation"); Strong v. Ozmint, No. 2:03-2256, 2005 U.S. Dist. LEXIS 43982, at *36 (D.S.C. Nov. 16, 2005) (concluding, where the plaintiff alleged that prison guards fondled, twisted, and pulled his genitals, then sodomized him with a stick, that even "though no evidence of physical injury exists on the record, the[] allegations [of sexual assault] concern behavior of the 'sort repugnant to the conscience of mankind' that cannot be excused even absent a showing of physical injury") (quoting Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994))); Marrie v. Nickels, 70 F. Supp. 2d 1252, 1264 (D. Kan. 1999) (concluding that, where a prison guard allegedly placed his hand in the prisoner's pants, caressed his buttocks, and stroked his genitalia, such a sexual assault qualified as a physical injury under § 1997e(e), precluding dismissal). Moreover, the PLRA "does not bar recovery of nominal or punitive damages in the absence of a physical injury where an inmate can show an injury of constitutional dimensions." Jones v. Price, 696 F. Supp. 2d 618, 625 (N.D. W. Va. 2010) (concluding that the plaintiff could recover nominal or punitive damages if a jury concluded that a prison guard violated the plaintiff's constitutional right to privacy by conducting an unreasonable strip search of the male plaintiff in plain view of a female secretary); *see also* McKinney v. Johnson, No. 2:09-1353, 2010 U.S. Dist. LEXIS 91555, at *10 (D.S.C. Sept. 2, 2010) (noting that the absence of physical injury does not bar recovery of nominal or punitive damages under 42 U.S.C. § 1997e(e)). Thus, although Plaintiff fails to allege physical injury arising from the sexual assault, the PLRA does not bar him from seeking nominal or punitive damages, if he can establish a constitutional violation.

**Analysis**

Plaintiff here has alleged sufficient facts to show a constitutional violation. When reasonably necessary, a strip search raises no constitutional concerns. *See, e.g.*, Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981). The "strip search" of Plaintiff, however, was patently unreasonable and obviously undertaken as a mere guise to facilitate Dancey's assault. There is certainly no evidence to suggest that Dancey's actions in "grabbing" Plaintiff's penis and attempting to perform fellatio furthered any legitimate goal of prison administration. The evidence of record further shows that Dancey resigned his position and was criminally charged for the incident. As the unchallenged facts constitute a legitimate cause of action, the undersigned finds Plaintiff is entitled to default judgment against Dancey and accordingly recommends that default judgment be entered. The remaining issue is therefore one of damages.

Section 1983 creates "a species of tort liability," Carey v. Piphus, 435 U.S. 247, 253 (1978), and, therefore, "when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986). While "[d]eterrence is . . . an important purpose of [§ 1983] . . . it operates through the mechanism of damages that are compensatory--damages grounded in determinations of plaintiffs' actual losses." *Id.* at 307; *see also* Evans v. Housing Authority of Raleigh, No. 5:04-CV-291, 2008 U.S. Dist. LEXIS 48950, at *19 (E.D.N.C. June 25, 2008) (same). Punitive damages may be awarded to plaintiffs in a section 1983 action "to deter or punish malicious deprivations of rights." Carey, 435 U.S. at 266.

Moreover, the Supreme Court's decision in Carey "obligates a court to award nominal damages when a plaintiff establishes the violation of [a constitutional right] but cannot prove actual injury." Farrar v. Hobby, 506 U.S. 103, 112 (1992); *see also* Williams v. Griffin, 952 F.2d 820, 825 n.2 (4th Cir. 1991) (noting that, "in the absence of a showing of actual injury, [plaintiff] would still be entitled to nominal damages upon proof of a constitutional violation"). "A plaintiff's failure to prove compensatory damages results in nominal damages, typically one dollar . . . . " Price v. City of Charlotte, 93 F.3d 1241, 1246 (4th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). "Although this sum does not represent a significant financial victory for the plaintiff, 'the law recognizes the importance to organized society that those rights [certain "absolute" rights that are not shown to have caused actual injury] be scrupulously observed.'" Evans, No. 5:04-CV-291, 2008 U.S. Dist. LEXIS, at *21 (quoting Carey, 435 U.S. at 266).

Here, Plaintiff alleged he sustained "mental and emotional distress" as a result of the sexual assault and asks for damages in the amount of $100,000. [DE-1]. He has submitted no evidence, however, of his emotional distress other than his testimony and affidavit. For example, there is no evidence that Plaintiff has sought clinical, psychological, or any other type of treatment for his anxiety or emotional distress. Such lack of evidence, while not fatal to Plaintiff's claim, decidedly weakens his assertions regarding an appropriate amount of damages to be awarded. Moreover, although Dancey's actions were reprehensible, damage awards of the amount sought by Plaintiff generally involve far more egregious behavior. *See, e.g.*, Hall v. Terrell, 648 F. Supp. 2d 1229, 1231 (D. Colo. 2009) (awarding the prisoner $354,070.41 in compensatory damages, $1,000,000.00 in punitive damages, and attorneys' fees under the PLRA in a case in which a prison guard coerced a prisoner into having a sexual relationship with him

9

that lasted for five months until the prisoner refused him, whereupon the guard brutally raped and so forcibly sodomized the prisoner that she required surgery). Prisoners alleging constitutional violations based on an unwanted touching, on the other hand, often cannot show that the undesirable contact was sexual in nature; such claims are dismissed. *See, e.g.*, Berryhill, 137 F.3d at 1076-77 (finding that civilian maintenance worker's brief touch to inmate's buttocks and not accompanied by any sexual comments or banter was not actionable as a sexual assault claim under § 1983); Hughes v. Smith, 237 F. App'x 756, 759 (3d Cir. 2007) (finding no Eighth Amendment violation arising from allegation that correctional officer, who had previously made sexual comments to the plaintiff inmate, allegedly touched the plaintiff's testicles through his clothing during a single pat-down frisk) (citing Bradley v. United States, 299 F.3d 197, 203 (3d Cir. 2002) (holding that pat-down search performed on the plaintiff by a female United States Customs Service inspector did not violate the Fourth Amendment; inspector had allegedly used fingers to "inappropriately push" on the plaintiff's breasts and outer portions of her genitalia through the plaintiff's dress); McCoy v. SCDC, No. 4:08-22930, 2009 U.S. Dist. LEXIS 89204, at *11 (D.S.C. Sept. 28, 2009) (finding no constitutional violation where a prison guard briefly touched the prisoner's clothed buttock).

In the instant case, Plaintiff has succeeded in establishing a constitutional violation. He is therefore entitled to at least nominal damages. The undersigned recommends that Plaintiff be awarded damages in the amount of one dollar. Punitive damages serve to "to deter or punish malicious deprivations of rights." Carey, 435 U.S. at 266. While Dancey's conduct was reprehensible, there has been no evidence that punitive damages are needed to deter this type of behavior. And although Plaintiff has stated he wants Dancey to "pay for what he has done," the

10

record indicates Dancey has resigned his position and has been subjected to criminal charges for his assault on Plaintiff, which must afford Plaintiff some satisfaction. The undersigned considers further punishment unwarranted under the facts of the instant case. Therefore, the undersigned declines to recommend punitive damages.

**Conclusion**

In accordance with the foregoing, the undersigned RECOMMENDS that Plaintiff's Second Motion for Default Judgment be GRANTED and that Plaintiff be awarded nominal damages in the amount of one dollar. The undersigned further RECOMMENDS that punitive damages be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 8th day of February, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE